UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Pauline Ann Dwyer,
      Claimant

      v.                                    Civil No. 11-cv-374-SM
                                            Opinion No. 2012 DNH 105

Michael J. Astrue, Commissioner,
Social Security Administration
      Defendant


**O R D E R**


Pursuant to 42 U.S.C. § 405(g), claimant, Pauline Ann Dwyer, moves to reverse the Commissioner's decision denying her application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act").  The Commissioner objects and moves for an order affirming his decision.


**Factual Background**

I.    Procedural History

On April 27, 2009, claimant filed an application for social security disability insurance benefits ("DIB benefits") alleging that she had been unable to work since February 12, 2009.  She asserts eligibility for benefits based on disabilities due to chronic neck pain, migraines, and fibromyalgia.  Her application

for benefits was denied and she requested an administrative hearing before an Administrative Law Judge ("ALJ").

On December 30, 2010, claimant, who was 41 years old at the time, her attorney, and an impartial vocational expert appeared before an ALJ.  Claimant's husband testified on her behalf.  On January 11, 2011, the ALJ issued his written decision, concluding that claimant was not disabled from February 12, 2009, through the date of the decision; that claimant had had the ability to do sedentary work with some restrictions, including her past work as a receptionist and phlebotomist.  Claimant was thus ineligible for DIB benefits.  The Decision Review Board selected the ALJ's decision for review, but did not complete its review within the time allowed.  Accordingly, the ALJ's decision became the final decision of the Commissioner, subject to judicial review.

Claimant then filed a timely action in this court, appealing the denial of DIB benefits.  Now pending are claimant's "Motion for Order Reversing Decision of the Commissioner" (document no. 8) and the Commissioner's "Motion for Order Affirming the Decision of the Commissioner" (document no. 10).

II.   <u>Stipulated Facts</u>

Pursuant to Local Rule 9.1(d), the parties submitted a Joint Statement of Material Facts which, because it is part of the court record (document no. 14), need not be recounted in this opinion.


## Standard of Review

I.   <u>Properly Supported Findings by the ALJ are Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.[1]  <u>See</u> 42 U.S.C. §§ 405(g); <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).  Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial

_____

[1]   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

evidence supporting the contrary position.  See Tsarelka v.
Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir.
1988) ("[W]e must uphold the [Commissioner's] conclusion, even if
the record arguably could justify a different conclusion, so long
as it is supported by substantial evidence.").  See also
Rodriquez v. Secretary of Health & Human Services, 647 F.2d 218,
222 (1st Cir. 1981) ("We must uphold the [Commissioner's]
findings in this case if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate to
support his conclusion.").

        In making factual findings, the Commissioner must weigh and
resolve conflicts in the evidence.  See Burgos Lopez v. Secretary
of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984)
(citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It
is "the responsibility of the [Commissioner] to determine issues
of credibility and to draw inferences from the record evidence.
Indeed, the resolution of conflicts in the evidence is for the
[Commissioner], not the courts."  Irlanda Ortiz, 955 F.2d at 769
(citation omitted).  Accordingly, the court will give deference
to the ALJ's credibility determinations, particularly when those
determinations are supported by specific findings.  See
Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192,

195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health &
Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).


II.   The Parties' Respective Burdens

      An individual seeking Social Security disability benefits is
disabled under the Act if he or she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The Act places a heavy initial burden on
claimant to establish the existence of a disabling impairment.
See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v.
Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir.
1991).  To satisfy that burden, claimant must prove that her
impairment prevents her from performing her former type of work.
See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7
(1st Cir. 1982)).  Nevertheless, claimant is not required to
establish a doubt-free claim.  The initial burden is satisfied by
the usual civil standard: a "preponderance of the evidence."  See
Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform. <u>See</u> <u>Vazquez v. Secretary of Health & Human Services</u>, 683 F.2d 1, 2 (1st Cir. 1982). <u>See also</u> 20 C.F.R. §§ 404.1512(g). If the Commissioner shows the existence of other jobs that claimant can perform, then the overall burden to demonstrate disability remains with claimant. <u>See</u> <u>Hernandez v. Weinberger</u>, 493 F.2d 1120, 1123 (1st Cir. 1974); <u>Benko v. Schweiker</u>, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) claimant's subjective claims of pain and disability, as supported by the testimony of claimant or other witnesses; and (3) claimant's educational background, age, and work experience. <u>See, e.g.</u>, <u>Avery v. Secretary of Health & Human Services</u>, 797 F.2d 19, 23 (1st Cir. 1986); <u>Goodermote</u>, 690 F.2d at 6. When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

(1)  whether claimant is engaged in substantial gainful activity;

(2)  whether claimant has a severe impairment;

6

    (3)    whether the impairment meets or equals a
            listed impairment;

    (4)    whether the impairment prevents claimant from
            performing past relevant work; and

    (5)    whether the impairment prevents claimant from
            doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if

his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

    With those principles in mind, the court reviews claimant's

motion to reverse and the Commissioner's motion to affirm his

decision.

## Discussion

I.    <u>Background - The ALJ's Findings</u>

    In deciding that Dwyer was not disabled, the ALJ employed

the mandatory sequential evaluation process described in 20

C.F.R. § 404.1520.  He first determined that she had not been

engaged in substantial gainful employment since her alleged onset
of disability.  Next, he concluded that claimant has the severe
impairments of status post intracranial aneurysm and migraine
headaches, but not a severe impairment of fibromyalgia.
Administrative Record ("Admin. Rec.") 12-13.  The ALJ determined
that Dwyer's impairments, regardless of whether they were
considered alone or in combination, did not meet or equal one of
the impairments listed in Part 404, Subpart P, Appendix 1.
Admin. Rec. 13.

Next, the ALJ concluded that Dwyer retained the residual
functional capacity ("RFC") to perform sedentary work, except
that she is limited to standing and walking a maximum of two
hours per day; she can never balance, but can perform all other
postural activities occasionally; and she should avoid all
exposure to workplace hazards, including dangerous machinery and
unprotected heights.  Admin. Rec. 13.  Based on his RFC, the ALJ
found that Dwyer was capable of performing past relevant work as
a receptionist and phlebotomist.  Admin. Rec. 16.

Consequently, the ALJ concluded that claimant was not
"disabled," as that term is defined in the Act, from February 12,
2009, through the date of his decision.  Admin. Rec. 17.
Claimant, therefore, was deemed ineligible for DIB benefits.

II.   <u>Claimant's Assertions of Error</u>

In support of her motion to remand, claimant advances the following claims: (1) the ALJ erred at Step 2 in the sequential evaluation process in finding that claimant's fibromyalgia was not a severe impairment; (2) the ALJ erred at Step 4 in the sequential evaluation process in finding that claimant was able to perform her past relevant jobs as phlebotomist and receptionist; and (3) the ALJ's decision is not supported by substantial evidence because, among other things, he ignored and/or misconstrued evidence of claimant's neck postural limitations and the severity of her pain.  Because it is dispositive of claimant's pending motion, only the last argument is addressed.  <u>See</u> <u>generally</u> <u>Blake v. Apfel</u>, 2000 WL 1466128, at *6 (D.N.H. January 28, 2000) (Barbadoro, J.) (reversing Commissioner's final decision where, among other things, ALJ "failed to consider" corroborating medical evidence and "misconstrued and/or ignored non-medical evidence").


III. <u>The ALJ Overlooked Relevant Evidence Relating to Neck Postural Limitations</u>

In February of 2010, at the urging of her treating physician assistant, claimant underwent functional capacity testing conducted by occupational therapist Gregory Morneau.  In his functional capacity evaluation ("FCE"), Morneau found that

claimant had the "potential" for "[s]edentary physical demand
level into the light range." He also found, however, that
claimant "presented with extreme limitation to stooping or any
activity requiring a forward head posture," such that future
employment would need to provide modifications "to promote
neutral cervical spine positioning and avoid repetitive rotation
or head movements." Admin. Rec. 519. He concluded, therefore,
that claimant was "unable to pursue gainful employment at this
time." Id. The ALJ accepted the "objective results" indicating
that claimant could "sustain a range of work between the
sedentary and light exertional levels," and gave "little weight"
to Morneau's opinion that claimant is unable to pursue gainful
employment. Admin. Rec. 16. However, the ALJ did not mention
Morneau's findings with respect to neck postural limitations.
Id. At the administrative hearing, claimant's attorney asked the
vocational expert ("VE") if a person would be able to do the jobs
of receptionist or phlebotomist if she "need[ed] her head to
remain in a neutral position" and needed "to avoid repetitive
rotation or head movements." Admin. Rec. 40-41. The expert
responded that the jobs could not "guarantee maintaining a
neutral position at all times, so, yes, it would affect the
ability to do these jobs." Id. at 41.

An ALJ is required to consider and weigh all relevant evidence, including the findings of sources, such as occupational therapists, who are not "acceptable medical sources".  Couitt v. Astrue, 2012 WL 1114292, at *5 (D.N.H. April 3, 2012) (Barbadoro, J.) (citing Alcantara v. Astrue, 257 F. App'x 333, 334-35 (1st Cir. 2007)).  Notwithstanding this obligation to consider relevant evidence from all sources, an ALJ is not required to discuss "every piece of evidence in the record."  Shulkin v. Astrue, 2012 WL 79007, at *8 (D.N.H. Jan. 11, 2012) (Barbadoro, J.) (citing Rodriguez v. Secretary of Health & Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. 1990) (per curiam; table, text available on Westlaw)).

As a practical matter, however, if an ALJ does not mention "important and highly probative" evidence "contradicting his view," Shulkin, 2012 WL 79007, at *11, meaningful judicial review may be foreclosed.  Id. (citing Lord v. Apfel, 114 F. Supp. 2d 3, 14 (D.N.H. 2000) (Barbadoro, J.)).  That is because the court in such a circumstance is not able to know whether the ALJ "considered and rejected" the evidence, which is within his sound discretion to do, or whether he "merely overlooked" it, which is impermissible.  Shulkin, 2012 WL 79007, at *11.  See also Lord, 114 F. Supp. 2d at 14 ("For a reviewing court to be satisfied that an ALJ's decision was supported by substantial evidence,

that decision must take into account whatever in the record
fairly detracts from its weight.") (quotations omitted).

    Here, the ALJ was careful to say that the "objective results
of the [functional capacity] testing" should be "given weight,"
and that Morneau's opinion that claimant was unable to pursue
gainful employment should be "given little weight."  The ALJ also
explained why he reached those conclusions.  Admin. Rec. 16.  But
he did not - even briefly or cursorily - mention Morneau's
finding of "extreme limitation to . . . any activity requiring a
forward head posture."[2]  Without more, this court cannot know
whether the ALJ "considered and rejected" the finding or whether
he "merely overlooked" it.  Shulkin, 2012 WL 79007, at *11.  See
also DaSilva-Santos v. Astrue, 596 F. Supp. 2d 181, 188-89
(finding error where "the hearing officer never acknowledged the
evidence that ran counter to his conclusions").

    The Commissioner argues, nevertheless, that the ALJ's "other
findings" imply that he considered and rejected Moreneau's
finding regarding neck postural limitations.  In support, the
Commissioner points only to the fact that the ALJ gave "great

---

2    The finding is "important and highly probative" on the issue
of claimant's ability to work, as established by the VE's
testimony.

weight" to the report of Dr. Hugh Fairly, the non-examining
Disability Determination Services doctor and adopted his opinion
about claimant's limitations.  Had Dr. Fairly considered
Morneau's FCE, it might be inferred that the ALJ also considered
and rejected Morneau's finding regarding postural limitations.
But Dr. Fairly, who did not examine claimant, did not consider
the FCE, which was conducted six months after he submitted his
report.  The ALJ's assignment of "great weight" to Dr. Fairly's
report, therefore, does not imply that he considered and rejected
Morneau's finding of neck postural limitations.  Moreover, unlike
this court's decision in Snow v. Astrue, 2011 WL 4828656, at *4
(D.N.H. Oct. 12, 2011), on which the Commissioner relies, the ALJ
here did not address neck postural limitations in any other part
of his decision.  See id. (finding that, although ALJ did not
mention medical source's finding of "motivation and fatigue," it
was "sufficiently clear from the ALJ's decision" why he
(implicitly) rejected the finding, where he directly addressed
the alleged limitation elsewhere in his decision).

     In sum, because the ALJ failed to discuss the FCE's finding
of neck postural limitations, this court cannot "be satisfied
that [his] decision was supported by substantial evidence."
Lord, 114 F. Supp. 2d at 14.  See also Nguyen v. Chater, 172 F.3d
31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are

conclusive when supported by substantial evidence, . . . but are not conclusive when derived by ignoring evidence").

## IV.   The ALJ Misconstrued Relevant Evidence Relating to Severity of Pain

In assessing the credibility of claimant's allegations of disabling pain, the ALJ found that her activities of daily living were inconsistent with the allegations.  The ALJ's conclusion does not seem to reflect the totality of the daily activities evidence.  See Blake, 2000 WL 1466128, at **6, 8 (reversing Commissioner's final decision where ALJ "misconstrued" evidence of claimant's activities of daily living).


Claimant stated that she experiences daily headaches that "sometimes . . . escalate to full migraines," "at least two-three times a week."  Admin. Rec. 32, 156.  She reported that numerous household activities trigger headaches, see id. at 29, 34, but that those that require a head-forward position, such as cooking and washing dishes, are particularly problematic.  Id. at 30, 34. The head-forward posture, she reports, triggers pressure and pain in her head and blurred vision.  She explained, for example:

> Like this morning just cleaning the dishes out of the
> sink, putting them in the dishwasher and trying to keep
> my neck at a decent so I'm not, you know, looking down
> too far, and it just started triggering a lot of
> pressure in my head where I did take medication for my

headaches and the blurred vision.  I mean, its' just-
and I keep asking the neurologist, you know, this can't
be normal, and they say it is, it's all part of
migraine.

Admin. Rec. 30


As a consequence, she reported, she does household chores in
half-hour increments, and must stop "for awhile."  Admin. Rec.
34.  She also reported that, while she continues to clean her
house, she does less than she used to do.  Id.


With regard to exercise, claimant stated that she "walk[s]
and stretch[es] with pain," but that the exercise "eases some of
the pain."  Tr. 142.  She testified that "[a] lot of times
[exercise] makes it worse, . . . I keep doing it because if I
don't I will be ten times worse."  Tr. 30.


The ALJ seems to have misconstrued the evidence of
claimant's daily activities in two ways.  First, he inferred that
claimant is not under severe pain because she engages in
exercise.  Admin. Rec. 15.  But the fact that claimant exercises
does not contradict her allegations of severe pain because her
testimony was that she exercises to alleviate pain.  See
Carradine v. Barnhart, 360 F.3d 751, 755-56 (7th Cir. 2004)
(Posner, J.) ("Since exercise is one of the treatments that

doctors have prescribed for Carradine's pain, and she does not claim to be paralyzed, we cannot see how her being able to walk two miles is inconsistent with her suffering severe pain."). Importantly, claimant's explanation that she exercises to alleviate pain is not contradicted on the record and, indeed, the ALJ accepted it.  See Admin. Rec. 15.

The ALJ also inferred a contradiction between claimant's allegations of disabling pain, on the one hand, and her ability to do household chores, on the other.  See generally Rodriguez, 647 F.2d 218, 222 (1st Cir. 1981) (the ALJ's "inference from evidentiary facts" must be "permissible").  "To be capable of substantial gainful activity," a claimant must be able to perform the tasks of a job "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  Blake, 2000 WL 1466128, at *8 (quotation and citations omitted).  A claimant's "ability to engage in limited daily activities, including light housework," therefore, "is not necessarily inconsistent with "the inability to perform substantial gainful activity."  Id. (quotation omitted) (emphasis added).  See also Carradine, 360 F.3d at 755 (ALJ is obligated "to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days.")

16

Here, the ALJ generally credited claimant's statements about her activities, and acknowledged that her blurred vision had some limiting effect on those activities.  He seems, however, to have overlooked evidence of the limited manner in which she performs those activities (i.e., by avoiding a head-forward posture and taking breaks at half-hour increments).  In doing so, the ALJ misconstrued the evidence.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) (reversing Commissioner's decision where, among other things, ALJ failed to take into account evidence that claimant undertook activities intermittently, choosing "when to do them to avoid experiencing severe pain").

The court need not decide whether the ALJ's assessment of the daily activities evidence, standing alone, would warrant remand.  Given the ALJ's failure to address the FCE's finding of neck postural limitations, the need for further administrative proceedings, on that ground, is apparent.  See Joyner v. Astrue, 2011 WL 4530678, at **7-8 (M.D. Fla. Sept. 29, 2011) (combination of, among other things, the ALJ's "misstatements (or misconstructions) of the record and the lack of reference to a significant portion of the medical evidence, create[d] the necessity for remand and further consideration of plaintiff's case.").

17

### Conclusion

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 8) is granted and the Commissioner's motion to affirm his decision (document no. 10) is denied.  The case is remanded for further proceedings in accordance with this order.  Because this remand is made pursuant to sentence four of 42 U.S.C. § 405(g), the Clerk of Court is instructed to enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 19, 2012

cc:  Raymond J. Kelly, Esq.
     Robert J. Rabuck, AUSA

18